UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 17-cr-00301-01 |
| VERSUS | JUDGE FOOTE |
| ELLIS HARP III (01) | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

**Introduction**

Ellis Harp, III ("Defendant") is charged in a three-count indictment with possession of a firearm by a convicted felon, possession with intent to distribute cocaine, and possession of a firearm in furtherance of drug trafficking crimes. Before the court is Defendant's Motion to Suppress. Doc. 21. For the reasons that follow, it is recommended that Defendant's motion be denied.

**Defendant's Motion to Suppress**

Defendant challenges the validity of three state-court search warrants that were issued to search two adjacent houses and a tire repair shop in Shreveport. Defendant argues that the affidavits in support of the search warrants lack sufficient facts to establish probable cause. Defendant also argues that the affidavits lack sufficient attestations to the credibility and/or reliability of information provided by a confidential informant. Doc. 21. In a supplemental memorandum in support of his motion to suppress (Doc. 28), Defendant argues the warrants failed to specify the crimes under investigation, the warrants failed to specify the items to be seized, and the warrants were overbroad.

After the motion to suppress was fully briefed, the parties jointly advised the court that an evidentiary hearing was not necessary, and that the issues in the motion could be resolved based on the four corners of the search warrants and the supporting affidavits. After reviewing the briefs, the undersigned agreed that no evidentiary hearing is required.

**The Search Warrants**

On February 26, 2018, a Caddo Parish district judge issued three search warrants at the request of Rick Anderson, who is a Caddo Parish Sheriff's deputy assigned to the DEA Task Force. The first warrant was for a tire repair shop located at 1610 Hollywood Avenue in Shreveport. The second warrant was for a residence located at 1951 Earl Street in Shreveport. The third warrant was for a residence at 1955 Earl Street, which is located adjacent to the residence at 1951 Earl Street. Except for the address and description of the location to be searched, the three warrants are identical. Each warrant authorized a search for the following:

1. Cocaine, a Schedule II controlled dangerous substance, but not limited to: cocaine.

2. Drug paraphernalia.

3. Monies and documents related to the sale of controlled dangerous substances.

Each warrant stated that the listed property constituted evidence of the commission of an offense against the laws of the State of Louisiana. Each warrant stated that the affidavit in support of the warrant was incorporated by reference. Doc. 29-1, Exhibits 1, 2, and 3.

The affidavits in support of the search warrants are identical except for the address and description of the premises to be searched. Doc. 21-2, Exhibit A. The affidavits provide the following information. In January 2015, the Drug Enforcement Administration ("DEA") Task Force began an investigation into the illegal narcotic activity of Defendant after a confidential source ("CS") brought information to DEA agents concerning Defendant's narcotic activity. The CS had been utilized by the DEA Task Force in prior investigations and was deemed truthful and proven to be reliable. He told agents that Defendant obtained multiple kilograms of cocaine from an unknown source of supply, then distributed the cocaine throughout the Shreveport area from a tire shop owned by Defendant called Auto and Tire Repair located at 1610 Hollywood Avenue, Shreveport, Louisiana ("the tire shop").

During the third week of February 2016, DEA agents arranged to conduct a controlled purchase of cocaine from Defendant using the CS. The CS was equipped with an audio/video recording device. DEA agents maintained surveillance of the CS when he arrived at the tire shop.

DEA agents saw the CS arrive at the location and enter the business. When the CS left the business, DEA agents followed him to a neutral location where he gave agents the electronic recording device and two (2) clear baggies containing cocaine purchased from Defendant. The CS told agents that Defendant had sold him the cocaine from within the business, and he observed more cocaine within the business.

During the fourth week of February 2016, DEA agents arranged to conduct a second controlled purchase of cocaine from Defendant using the same CS. DEA agents again set

up surveillance units at the tire shop. The CS was equipped with an audio/video recording device.

DEA agents observed the CS enter the tire shop and then walk away from the business. The CS returned to his vehicle and sat in the passenger seat. DEA agents also saw Defendant leave the tire shop. DEA Special Agent William Green followed Defendant from the tire shop and watched him pull into the driveway of the residence located at 1951 Earl Street. DEA agents then saw Defendant leave the residence and get back into his vehicle. The agents followed Defendant back to the tire shop.

The CS went into the tire shop and then returned to his vehicle. The agents followed the CS to a predetermined location. There, the CS gave the agents the audio/video recording and two clear baggies of cocaine. The CS informed agents that when he arrived at the tire shop, Defendant was at a barbershop next door. The CS stated that he walked to the barbershop and knocked on the door but no one answered. The CS walked back to his vehicle and waited for Defendant. A few minutes later, the CS met with Defendant about purchasing cocaine. Defendant told the CS to wait at the tire shop and he would be back. Defendant then left the tire shop and returned to the business with the cocaine. Defendant gave two baggies of cocaine to an unknown black male inside the bay area of the tire shop. The unknown male gave the cocaine to the CS. The CS gave the unknown male money for the cocaine. The CS advised DEA agents that Defendant was present during this transaction and was standing next to him.

DEA agents interviewed the CS concerning properties in which Defendant resides and owns. The CS stated Defendant lives at 1951 Earl Street in Shreveport, Louisiana.

The CS said Defendant also owns the neighboring residence located at 1955 Earl Street in Shreveport, Louisiana. The CS stated that he had been inside the residence at 1951 Earl Street on several occasions and had seen cocaine inside the residence. The CS also stated that the neighboring residence had no visible street numbers; however, the he believed it to be 1955 Earl Street. The CS stated Defendant had told him on several occasions that he used 1955 Earl Street as a stash location for his illegal drugs.

DEA agents observed the 1951 Earl Street and 1955 Earl Street residences. They observed a brick foundation with a metal gate surround both residences. The agents also noticed the back yards of both residences were surrounded by what appeared to be one wooden fence. The agents confirmed information provided by the CS that there were no visible street numbers for the 1955 Earl Street residence. Agents also observed burglar bars on the front door of the 1955 Earl Street residence. Anderson stated in the affidavit that, in his experience, burglar bars are commonly used by drug dealers to secure their drugs from thieves and to create a time gap to allow suspects to destroy evidence prior to law enforcement's entry into the premises.

DEA TFO Rick Anderson obtained Caddo Parish water records for 1951 and 1955 Earl Street. The residences had active water listings in the name of Sheila Harp, Defendant's wife. TFO Anderson also discovered through the Caddo Parish Tax Assessor's Office that both residences were owned by someone named Harp.

During the search of the tire shop, agents located a loaded Glock Model 22, .40 caliber pistol, marijuana, and crack cocaine. At the 1951 Earl Street residence, agents discovered a Glock 9mm pistol magazine, a CitiBank envelope addressed to

Defendant, and a photocopy of Defendant's driver's license. During the search of the 1955 Earl Street residence, agents found approximately 62.1 grams of marijuana, approximately 196.2 grams of powder cocaine, a .44 Magnum Ruger Super Blackhawk revolver, and an Olympic Arms AR-15 rifle.

**Law and Analysis**

  A.  **Probable Cause**

A probable cause determination is a practical, common sense decision as to whether, given all of the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. United States v. Thomas, 627 F.3d 146, 159 (5th Cir. 2010). Probable cause does not require proof beyond a reasonable doubt, but only a showing of the probability of criminal activity. United States v. Daniel, 982 F.2d 146, 151 (5th Cir. 1993). Probable cause is determined through an examination of the totality of the circumstances. United States v. Fields, 456 F.3d 519, 523 (5th Cir. 2006).

When much of the information contained in a supporting affidavit comes from a confidential informant, a magistrate's search for probable cause must be guided by and measured against the standards set forth in Aguilar v. State of Texas, 378 U.S. 108 (1964) and Spinelli v. United States, 393 U.S. 410 (1969). Under those standards, the magistrate must be told of the underlying circumstances and particular facts which support the confidential informant's conclusions. The magistrate must also be told why the informant should be considered reliable. United States v. Hyde, 574 F.3d 856, 862 (5th Cir. 1978).

The affidavits in this case provide only the following conclusory statement regarding the CS: "The CS has been utilized in prior investigations and has been deemed truthful and proven to be reliable." However, the lack of additional information regarding the confidential informant is not fatal to the warrants in this case, because the agents corroborated the CS's information by using physical surveillance as well as audio/video recording devices. The agents also corroborated the CS's information regarding the residences located at 1951 and 1955 Earl Street. They personally observed the shared fences, and the agents also checked the records of the local water department and tax assessor's office. Under these circumstances, the CS's information, which was corroborated through the agents' surveillance and controlled buys, provided ample probable cause to issue warrants to search the tire shop and the two residences.

**B. Specificity of Crimes Under Investigation**

Defendant argues that the search warrants are invalid because the warrants only generally referenced alleged criminal activity. But that is not correct. The search warrants specifically stated that the agents were investigating the sale of controlled dangerous substances (cocaine) which "constitutes evidence of the commission of an offense against the laws of the State of Louisiana …." The search warrants also incorporated the supporting affidavits by reference, and the affidavits abundantly established that the agents were investigating Defendant's cocaine trafficking activities. The Fourth Amendment does not prohibit a warrant from cross referencing other documents. Groh v. Ramirez, 540 U.S. 551, 554 (2004).

Defendant argues that the affidavits in support of the search warrants contain no limitations or boundaries as to the items to be seized. According to Defendant, the executing officers were left with vast discretion in determining what items could be seized from the properties.

Defendant's arguments are without merit. Each of the search warrants stated that the agents were searching for cocaine, drug paraphernalia, and monies and documents related to the sale of controlled dangerous substances. The agents clearly knew from the four corners of the warrants what items were to be seized during execution of the warrants.

### C. Overbroad or General Warrants

Defendant argues that the search warrants authorized agents to make a search of the described premises with "no limitation or boundary whatsoever as to the scope of the search authorized by the warrants." Doc. 28, p. 5. That argument also lacks merit. Each search warrant described the particular property to be searched by listing the address of each property and giving various descriptions of each property. For example, the warrant for the tire repair shop gave the municipal address of the location, described the paint colors on the exterior of the premises, specified the location where the street number was located on the exterior of the business, provided the name of the business, and provided the intersection adjacent to the premises. And, as explained above, each warrant provided a list of the items the agents believed would be present.

### D. Good Faith

The Government argues that the affidavits in support of the search warrants contain sufficient facts so that it was reasonable for the agents to rely in good faith on the validity

of the warrants. That is correct. There is no suggestion that Agent Anderson falsified or misrepresented the facts that were contained in the affidavits and necessary for a finding of probable cause. And the affidavits clearly establish probable cause.

The <u>Leon</u> good-faith exception provides that evidence is admissible when it is obtained by law enforcement officials acting in an objectively reasonable, good-faith reliance upon a search warrant, even if the affidavit on which the warrant was based was insufficient to establish probable cause. <u>United States v. Leon</u>, 468 U.S. 897, 922-923 (1984). A warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search. Defendant has not established that any of the exceptions to the good-faith exception apply here.

**Conclusion**

The three search warrants were supported by probable cause that each of the premises contained the specified items of evidence believed to be located within each of the premises. Furthermore, based on the contents of the warrants, it was objectively reasonable for the agents to rely in good faith on the warrants. Accordingly, there is no basis to suppress any evidence located or obtained as a result of the searches.

Accordingly,

**IT IS RECOMMENDED** that Defendant's **Motion to Suppress (Doc. 21)** be **denied**.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this

Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 45(b).  A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana this 9th day of July, 2018.

_____
Mark L. Hornsby
U.S. Magistrate Judge